UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CASSANDRA JONES                                       CIVIL ACTION

VERSUS                                                NO. 13-6288

SEWAGE AND WATER BOARD OF NEW ORLEANS                 SECTION K  *Flag Section C*

ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by Defendant Sewage and Water Board of New Orleans ("SWB"). *See* Rec. Doc. 91. Plaintiff Cassandra Jones opposes the motion. *See* Rec. Doc. 98. Defendant filed a reply memorandum. *See* Rec. Doc. 99. Having considered the memoranda of counsel, the record, and the applicable law, the motion is GRANTED for the following reasons.

I.   BACKGROUND

The following facts are uncontested by either party. Jones was hired by SWB in 1987. *See* Rec. Doc. 91-2 at 3; Rec. Doc. 98-8 at 15:3–4. In 1998, Jones transferred to the Boiler Room Unit at the entry-level position of Utility Plant Worker II ("UPWII"). *See* Rec. Doc. 91-2 at 3; Rec. Doc. 98-8 at 19:2–7. She was promoted to the position of Boiler Plant Operator ("BPO") in 2000. *See* Rec. Doc. 91-2, at 3. On September 9, 2008, she requested a transfer to the Pumping and Power Department, which was granted in March 2009. *See* Rec. Doc. 91-2 at 3. She was assigned to the Old River Intake Station. *See* Rec. Doc. 91-2 at 3; Rec. Doc. 98-1 at 2.

SWB's company policy was such that when an individual transferred between departments, they must begin as a UPWII. *See* Rec. Doc. 91-2 at 4. In the Pumping and Power Department, a UPWII would be promoted to a Pumping Plant Operator ("PPO") upon the completion of training and an exam. *See* Rec. Doc. 91-2 at 3. However, when Jones transferred

1

from the Boiler Room Unit to the Pumping and Power Department, she was allowed to retain her BPO status and salary, although her job responsibilities were that of a UPWII. *See* Rec. Doc. 91-2 at 4.

One of the integral job functions of a PPO at the Old River Intake Station involved operating three pumps that operated on a 25-cycle frequency ("25-cycle pumps"). *See* Rec. Doc. 91-2 at 4. The operation of the 25-cycle pumps requires considerable strength as the old machinery employs a springboard mechanism. *See* Rec. Doc. 91-2 at 4–5. Jones was unable to operate the 25-cycle pumps without assistance, because she was too short to get the leverage necessary to flip the switches. *See* Rec. Doc. 91-2 at 5; Rec. Doc. 98-8 at 46:11–25. Although Jones trained as a UPWII at the Old River Intake Station for over two years, she was never promoted to Power Plant Operator ("PPO"). *See* Rec. Doc. 91-2 at 4; Rec. Doc. 98-1 at 6.

On September 19, 2011, Jones filed a grievance for loss of overtime pay and unfair treatment. *See* Rec. Doc. 91-2 at 5; Rec. Doc. 98-6 at 1. In October 2011, SWB transferred Jones back to the Boiler Room Unit. *See* Rec. Doc. 91-2 at 5.

An investigation into Jones' grievance was conducted by SWB's Equal Employment Opportunity ("EEO") Officer Bobby Nathan ("Nathan"). *See* Rec. Doc. 91-2 at 6. In his report, Nathan concluded that Jones' training was not documented properly by her supervisor, Bobby Bolden ("Bolden"), and that Jones should be reinstated at the Old River Intake Station. *See* Rec. Doc. 98-6.

On June 19, 2012, Jones filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination and retaliation. *See* Rec. Doc. 98-7. On July 30, 2013, the EEOC was unable to establish a violation of anti-discrimination statutes, closed its investigation, and issued Jones a "right to sue" letter. *See* Rec. Doc. 91-5. Jones subsequently

filed suit on October 29, 2013, alleging violations of Title VII on the basis of sex discrimination, retaliation, continuing discrimination, and constructive discharge.

On April 7, 2015, SWB filed a Motion for Summary Judgment on the grounds that (1) Jones did not exhaust her administrative remedies with regard to her constructive discharge claim and continuing discrimination claim, (2) Jones could not establish her *prima facie* case for sex discrimination, and (3) Jones could not establish her *prima facie* case for retaliation. *See* Rec. Doc. 50. On May 15, 2015, the Court granted SWB's motion with regard to their first argument, and dismissed the constructive discharge and continuing discrimination claims. *See* Rec. Doc. 63. The Court denied the motion with regard to their second and third arguments due to the lack of relevant evidence on the record. *See id.*

On December 22, 2015, SWB filed a second Motion for Summary Judgment on the grounds that Jones cannot establish her *prima facie* case for sex discrimination and retaliation. *See* Rec. Doc. 91.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317 322–23 (1986). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific

facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322–24). When necessary, the court must draw all reasonable inferences in favor of the nonmoving party. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, if the evidence does not exist, the court cannot assume that the nonmoving party will be able to prove the necessary facts to create a genuine issue of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### III.   LAW AND ANALYSIS

SWB's motion makes two arguments. SWB argues that Jones cannot establish a *prima facie* case for her sex discrimination claim nor for her retaliation claim. Jones contests both arguments, arguing that she can establish *prima facie* cases for both claims.

A. Title VII Sex Discrimination

In Title VII sex discrimination cases, federal courts employ a burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework consists of three parts. Initially, the plaintiff has the burden of persuasion of establishing a *prima facie* case of discrimination. In order to establish a *prima facie* case of discrimination, a plaintiff must prove that:

1. They are a member of a protected class;
2. They were qualified for the position;
3. They were subject to an adverse employment action; and
4. The circumstances are such that an unlawful discriminatory reason for the adverse employment action can be inferred.

4

*See McDonnell Douglas Corp.*, 411 U.S. at 802. The plaintiff must satisfy all four prongs. Next, the defendant has the burden of production to articulate a legitimate, non-discriminatory reason for the alleged adverse employment action. Finally, the plaintiff has the burden of persuasion of proving that the defendant's reason is merely pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). SWB contends that Jones is unable to fulfill her burden of persuasion in the first step of the *McDonnell Douglas* framework because she cannot establish a *prima facie* case of sex discrimination. The Court will address the parties' arguments for all four factors.

    i.    Protected Class

SWB argues that Jones is not a member of a protected class. *See* Rec. Doc. 99-2 at 3–4. SWB bases its argument on Jones' testimony that she was too short to reach the switch. *See id.*; Rec. Doc. 91-18 at 89:3–23. SWB characterizes Jones' claim as an issue of discrimination on the basis of height, not sex, which is not a protected class. *See id.* Jones argues that she established that she is a member of a protected class because she is female. Regardless of the basis on which she was discriminated, it is undeniable that Jones satisfies factor one, as she is clearly a member of a protected class due to her sex.

    ii.    Qualified

SWB argues that Jones was not qualified for the position of PPO. *See* Rec. Doc. 91-2 at 14–15; Rec. Doc. 99-2 at 4–8. To be promoted from UPWII to PPO, Jones was required to pass a written test as well as a performance test. *See* Rec. Doc. 91-2 at 4–5; Rec. Doc. 91-9. It is not disputed by either party that Jones was unable to complete the performance test due to her inability to operate the 25-cycle pumps without assistance because of her height. Thus, according to SWB, Jones is not qualified for the position of PPO. Jones argues that she is qualified because

she met SWB's legitimate expectations for promotion to PPO. To bolster her argument, she points to a positive job evaluation from 2011, which she spent mostly in the Old River Intake Station. Jones also states that the Nathan Report recommends that Jones be transferred back to the Old River Intake Station. *See* Rec. Doc. 98-1 at Ex. P-2; Rec. Doc. 98-6. Jones argues that she was, in fact, qualified because her inability to operate the 25-cycle pump could have been remedied with a stool that was designed by SWB's previous Safety Engineer, Keith Pete ("Pete"). *See* Rec. Doc. 98-1 at 5.

The Fifth Circuit has held that "[a]n employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not 'qualified.' However, only objective requirements may be used in making this argument." *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). SWB required that applicants pass a qualifying exam that tested whether the applicant could operate any equipment required by the position. *See* Rec. Doc. 91-8. These qualifications are undeniably objective and do not require the examiner's subjective assessment of whether the applicant was successful. Jones notes that when her supervisor was questioned by Nathan, he was unable to provide adequate information regarding her training. *See* Rec. Doc. 98-1 at 12. While that is usually cause for concern regarding the potential subjectivity of the test, neither SWB nor Jones disputes that Jones was physically unable to operate the 25-cycle pump without assistance, an essential responsibility for a PPO. Jones' inability to meet the objective requirements of the PPO position thus precludes her from satisfying the second prong.

It is important to note here that the job evaluation that Jones relied on is missing the employee's signature. SWB further claims that Jones did not produce this evaluation during

6

discovery nor is the evaluation in Jones' employee file. *See* Rec. Doc. 99-2 at 4 n.9. These flaws prevent the Court from considering this evidence as competent for summary judgment.

Furthermore, the Nathan Report and Pete Report are of particular importance to Jones' case to demonstrate that she is qualified and to raise doubt as to SWB's contention that it was unsafe for her to use a stool in the Old River Intake Station. *See* Rec. Doc. 91-11; Rec. Doc. 91-12. The Pete Report concludes that it is indeed safe and preferable that stools or ladders be made available for employee use in the KVA Room. *See* Rec. Doc. 91-12. SWB raises the fact that the KVA Room referenced by Pete, and subsequently relied upon by Nathan in the preparation of his report, is not in the Old River Intake Station but rather, in the Carrollton Water Plant, a completely different location. *See* Rec. Doc. 99-2 at 5. Current SWB Safety Engineer Joseph Mirabin testified in his affidavit that the KVA Room is a one-story electrical breaker room, factually distinguishable from the Old River Intake Station, a large pumping station. *See* Rec. Doc. 99-3 at 2. Jones does not provide evidence to the contrary and does not respond to SWB's arguments that the reports are irrelevant. In the absence of any evidence, the Court cannot assume that Jones can otherwise prove facts that will create any genuine issue of material fact.

    iii.    Adverse Employment Action

SWB argues that Jones did not suffer any adverse employment action. *See* Rec. Doc. 99-2 at 8–9. While training as a UPWII at the Old River Intake Station, Jones maintained her higher BPO salary. When Jones could not pass the performance test and qualify for a promotion to PPO, SWB transferred her back to the Boiler Room where she could continue working as a BPO. Jones' assertion is that she suffered economic losses due to a loss in potential overtime pay and that had she been subsequently promoted to Engineer I or II, she would have received additional pay. *See* Rec. Doc. 98-1 at 6. SWB disagrees with Jones' assertion that her economic losses

7

include the overtime pay she would have received as a PPO. SWB argues that Jones has the same opportunities for overtime as either a BPO or a PPO. According to SWB's policies, Jones' argument is flawed because she continued to have an opportunity to be promoted to Engineer I from the position of BPO. Neither party, however, has produced evidence to support their respective arguments regarding overtime and promotion opportunities.

SWB further notes that as a BPO, Jones was given additional chemical pay on top of her salary that she would not have received as a PPO. *See* Rec. Doc. 99-2 at 8. SWB contends that because Jones does not have economic losses, and in fact has economic gains, there was no adverse employment action. Nevertheless, SWB's argument is weakened by the lack of evidence comparing the pay scale of a PPO and a BPO.

In making their arguments for this factor, both parties incorrectly focus on Jones' economic losses. Rather, the proper analysis focuses on the failure to promote, which is widely considered an adverse employment action. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.") (quoting *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div*, 37 F.3d 1146, 1149 (5th Cir. 1994)). Neither SWB nor Jones dispute that Jones was not promoted to PPO. The Court is satisfied that Jones suffered from an adverse employment action.

   iv. Causation

SWB contends that Jones cannot establish an unlawful discriminatory cause because there is no evidence of differential treatment based on sex. *See* Rec. Doc. 91-2 at 15–16; Rec. Doc. 99-2 at 10–13. SWB notes that there is no evidence of a similarly situated male employee (i.e. one who could not pass the performance test) who was promoted to PPO or allowed to have assistance. Jones incorrectly points to Claude Carter ("Carter"), a similarly-situated male

employee who was recently employed at the Old River Station, who was allowed to use the stool to perform his duties. *See* Rec. Doc. 98-1 at 7–8. However, the record reflects that Carter was first employed by SWB in 1989 and only remained with SWB for eight months. *See* Rec. Doc. 91-22. In addition, employee records do not indicate Carter's physical stature nor can any SWB employee testify as to the veracity of Jones' statement. *See* Rec. Doc. 99-2 at 13. In light of the record, Jones' reliance on hearsay is not competent summary judgment evidence. Jones additionally contends that she was treated less favorably than similarly situated male employees. *See* Rec. Doc. 98-1 at 6–8. Jones allegedly assisted in training another UPWII, Phillip Lackings ("Lackings"), during her tenure at the Old River Station and he was promoted on October 2011 while she was not. SWB argues that rather than training Lackings, Jones was only a fellow trainee. *See* Rec. Doc. 99-2 at 10–11. Jones' own testimony suggests that she trained *with* Lackings. *See* Rec. Doc. 91-18 at 34:5–21. Jones further claims that her training supervisor, Damon Adams, stated that she "was too short and too weak as [a] woman to work as a PPO." Rec. Doc. 98-1 at 8. In Jones' initial EEOC intake questionnaire, she stated that on September 19, 2011, Damon Adams, Steam Plant Engineer IV, said that she was too "short, weak, and a woman to do the job." Rec. Doc. 98-7 at 2. On October 19, 2011, Lyndell Scott and Bobby Bolden, both holding the position of Steam Plant Engineer I, allegedly made the same comments. *See id.* However, in her deposition, Jones only claims that Bolden said she was too short to pull the switch. *See* Rec. Doc. 98-8 at 89:3–18. Jones' assertion has only appeared in her reply brief and EEOC intake questionnaire, which does not constitute competent summary judgment evidence.

  A plaintiff can show that unlawful discrimination was the cause of the adverse employment action in three ways. She can show that there was disparate treatment. *See Watson*

*v. Fort Worth Bank and Trust*, 487 U.S. 977, 985–86 (1988) ("[W]hen an individual alleges that an employer has treated that particular person less favorably than others because of the plaintiff's . . . sex."). She can show that there was a disparate impact. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) ("Title VII prohibits . . . practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities."). Alternatively, she could show that the employer had mixed motives for their decision. 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that . . . sex . . . was *a motivating factor* for any employment practice, even though other factors also motivated the practice.") (emphasis added).

In the case at bar, Jones only presents arguments for a disparate treatment claim. Because SWB has met its initial burden of showing there is no inference of unlawful discrimination, Jones must show evidence that creates a genuine issue of material fact that she was treated unfavorably compared to a similar situated employee. However, other than providing the names of similarly-situated male employees, Jones does not provide any evidence to support these claims or rebut SWB's evidence. The Court cannot, in the absence of evidence showing that disparate treatment between Jones and similarly-situated male employees, assume that Jones can prove these claims on the basis of only her allegations.

Even if Jones can establish her *prima facie* case for sex discrimination, SWB contends that it can articulate a legitimate, non-discriminatory reason. *See* Rec. Doc. 91-2 at 19. Specifically, SWB argues that it is unsafe for Jones to have any assistance in the form of a stool or a ladder due to the way that the Old River Intake Station is designed. SWB's current Safety Engineer, Joseph Mirabin, stated that due to a potential fall hazard, it was integral that the PPO be able to flip the switch for the 25-cycle pump while maintaining proper footing on the floor.

Due to the force necessary to flip the switch, using a box or a ladder may cause a loss of balance for the employee. The danger is increased due to the switch being located only one foot from a lowered step and catwalk. Should an employee lose their balance, they would likely fall down the step, causing further injury. *See* Rec. Doc. 91-30 at 2. Jones was unable to do so and testified to this in her deposition. *See* Rec Doc. 91-18 at 46:10–25, 47:1–12. As noted before, Jones' reliance on the Nathan Report and Pete Report to create a genuine issue of material fact is suspect due to the lack of evidence that these reports are applicable to the Old River Intake Station.

Thus, the Court finds that Jones has failed to establish a *prima facie* case for sex discrimination in violation of Title VII. In particular, Jones has failed to create a genuine issue of material fact for the second and fourth prongs of a *prima facie* case.

B.  Title VII Retaliation

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that:

1. They engaged in a protected activity;
2. They suffered an adverse employment action; and
3. There is a causal link between the employment action and the protected activity.

*See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473 (5th Cir. 2008). SWB successfully argues that Jones has not established the *prima facie* case and therefore, cannot survive summary judgment. The Court will address all three prongs.

i.  Protected Activity

SWB argues that Jones did not engage in a protected activity. *See* Rec. Doc. 91-2 at 16–18. SWB notes that Jones' grievance does not qualify as a protected activity because she did not allege any unlawful discrimination nor did it constitute participation in any Title VII processes. *See* Rec. Doc. 91-10. Jones claims that her grievance, which cited unfair treatment in the workplace, is sufficient because she made a charge against SWB. *See* Rec. Doc. 98-1 at 9. Jones' reply brief indicates that her grievance alleged sex-based discrimination as well.

Title VII protects two types of activity from retaliation: the opposition of any discriminatory practices prohibited by Title VII (opposition clause) and the participation in any EEOC proceedings (participation clause). 42 U.S.C. § 2000e-3. In her reply brief, Jones states that she made a charge against SWB. Rec. Doc. 98-1 at 9. The language Jones invokes (i.e. made a charge) seems to implicate the participation clause, which specifically "protects employees against retaliation for their participation in the procedures established by Title VII to enforce its provisions." *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1135 (5th Cir. Unit A 1981). In relevant part, Title VII prohibits discrimination because an employee has made a "charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. These procedures refer to any interaction with the EEOC that the plaintiff may have had. An internal grievance filed by Jones does not satisfy the participation clause, as it is not a procedure established by Title VII, and is thus not a protected activity.

If Jones meant to invoke the opposition clause, however, she still cannot provide the evidence to show that she engaged in protected activity. The Fifth Circuit has held that "[a] vague complaint, without reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Riley v. Napolitano*, 537 Fed. Appx. 391, 392 (5th Cir. 2013).

Jones argues that her grievance alleged sex-based discrimination. However, the evidence shows that Jones merely stated that she was treated unfairly and did not explicitly state that the unfair treatment was *because of* sex. Therefore, Jones has not raised a genuine issue of material fact that she engaged in protected activity.

      ii.      Adverse Employment Action

SWB contends that Jones did not suffer from any adverse employment action. *See* Rec. Doc. 91-2 at 18. SWB raises the same points against the retaliation claim as it does against Jones' sex discrimination claim: Jones did not suffer any adverse employment action because she was transferred back to the Boiler Room to the position she initially had and was economically benefited from the chemical pay given to BPOs but not PPOs. Jones disputes SWB's arguments and claims that there was an adverse employment action because she was transferred back to the Boiler Room after filing a grievance, despite a satisfactory job performance. *See* Rec. Doc. 98-1 at 10. As noted above, SWB disputes the validity of the job evaluation.

For a Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotations omitted). The Fifth Circuit has held that when the employment action is a transfer, where there is no pay cut, loss of standing, decrease of benefits, loss of prestige, or loss in responsibilities, there is no material adversity as it does not dissuade the reasonable employee from making a charge of discrimination. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008); *Vicknair v. La. Dept. of Pub. Safety and Corr.*, 555 Fed. Appx. 325, 330–31 (5th Cir. 2014). Jones does not allege that the

transfer back to the Boiler Room was accompanied by any of the above factors. In fact, Jones received subsequent increases in salary. Thus, Jones cannot claim that her transfer rose to the level of material adversity.

    iii.    Causation

Finally, SWB contends that even if Jones could establish the first two prongs of retaliation, she cannot establish causation. *See* Rec. Doc. 99-2 at 14. Jones claims there is causation because of the proximity between the grievance and the transfer. *See* Rec. Doc. 98-1 at 10–11. Retaliation claims require proof of but-for causation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2528 (2013). Jones claims that a time period of a week between her filing the grievance and her transfer is sufficient to indicate but-for causation. Temporal proximity itself is not dispositive to establish causation unless it is very close. *See Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001). While precedent suggests that a time period of a week is sufficiently close enough to satisfy causation, the Court's finding that there was no evidence of protected activity or an adverse employment action precludes a finding of causation between events that did not occur.

Additionally, she again claims that the Pete Report authorized her use of the stool and that Carter, who was of similar stature, was allowed to use the stool. However, as previously discussed, none of these claims are substantiated with competent summary judgment evidence. Moreover, Jones's claim is based on the Pete Report, which specifically discusses a factually distinguishable room.

Although not raised in the briefs, the Court finds it suspicious that after Jones failed the practical portion of the test in June 2010, she continued to be stationed at the Old River Intake Station for at least another year. *See* Rec. Doc. 98-7 at 5; Rec. Doc. 98-8 at 55:8–25, 56:1–21. In

14

her deposition, Jones suggests that SWB needed her to continue at the Old River Intake Station because another employee had just been terminated. *See* Rec. Doc. 98-8 at 55:24–25, 56:1–10. SWB did not offer an explanation for this decision.

Nevertheless, Jones cannot establish a *prima facie* case for retaliation in violation of Title VII. She is unsuccessful in creating a genuine issue of material fact for all three prongs of the *prima facie* case.

### IV.   CONCLUSION

Accordingly,

IT IS ORDERED that defendant's Motion for Summary Judgment is GRANTED as to plaintiff's Sex Discrimination and Retaliation Claims. *See* Rec. Doc. 91.

New Orleans, Louisiana, this 15th day of March, 2016.

                                                             _____
                                                             STANWOOD R. DUVAL, JR.
                                                             UNITED STATES DISTRICT JUDGE